UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| TRUCK TIRE SALES, INC., JULICIA LEE, Individually and as Special Administrator of the Estate of SAMYRA MARIE LEE, ERIC W. RICE, SOCIETY INSURANCE, THE CITY OF CHICAGO, and KLAFTER NORTHERN INSURANCE SERVICE, LTD., | ) ) ) ) ) ) ) | No.  16 cv 11045  Judge Rebecca R. Pallmeyer |
| Defendants . | ) ) | |
| _____ | ) | |
| CITY OF CHICAGO, | ) ) | |
| Counter-Plaintiff | ) ) | |
| v. | ) ) | |
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Counter-Defendants. | ) ) ) | |

## MEMORANDUM ORDER AND OPINION

In this action, Plaintiff insurers seek a declaration that they are not liable to defend or indemnify Defendant Truck Tire Sales for a fatal accident that occurred in May 2016.  As explained here, the court concludes that the Plaintiffs' policies do not cover the loss and therefore grants judgment in favor of the insurers.

## INTRODUCTION

In May 2016, Defendant Eric Rice allegedly struck two pedestrians, Julicia and Samyra Lee, while performing weed-cutting work for his employer, Defendant Truck Tire Sales, Inc. ("Truck Tire"), pursuant to Truck Tire's contract with the City of Chicago.  Samyra Lee died as a

result of the collision.  Defendant Truck Tire had a commercial general liability insurance policy with Plaintiff Ohio Security Insurance Company ("Ohio Security") and an umbrella policy with Plaintiff Ohio Casualty Insurance Company ("Ohio Casualty"), both affiliates of Liberty Mutual Insurance.  Truck Tire had a second commercial general liability policy with Defendant Society Insurance ("Society").  After the Lee accident, Defendant Truck Tire tendered the claim to Defendant Society who agreed to provide a defense in the underlying lawsuit brought by Julicia Lee as administrator of her daughter's estate.[1]  Later, Defendant Truck Tire tendered the claim to Plaintiffs as well.

Plaintiffs Ohio Security and Ohio Casualty contend they have no obligation to defend or indemnify Truck Tire, Rice, or the City in connection with the *Lee* lawsuit.  Both sides (the insurers and the insured business) seek summary judgment, and the City seeks summary judgment on its counterclaim for a declaration that it is an additional insured under Plaintiffs' policies.  Because Plaintiffs' insurance policies unambiguously provide coverage only for Truck Tire's tire sales and service operations, and not for Truck Tire's weed-cutting operations, Plaintiffs' motion for summary judgment is granted.

## BACKGROUND

Defendant Truck Tire Sales, Inc. is based in Chicago, Illinois and is owned by Edward Gomez.  Its business operations include tire sales and services, weed-cutting under a contract with the City of Chicago, and transportation for engineers engaged in water main testing for the City of Chicago.  (Truck Tire Defs.' Resp. to Pls.' 56.1 Statement ("TTD 56.1 Resp.") [187] ¶ 3; City 56.1 Statement of Material Facts ("City 56.1 Statement") [179] ¶ 20.)  Truck Tire conducts these operations through a single corporation and uses a single Federal Employer Identification Number ("FEIN") for tax purposes.  (TTD 56.1 Resp. ¶ 3.)  Plaintiffs contend that Truck Tire runs

---

[1]    Defendants Truck Tire Sales, Inc., Eric W. Rice, and Society Insurance are represented by the same counsel in this case.  Unless the facts require a reference to an individual Defendant, the court will refer to them collectively as the Truck Tire Defendants.

these operations as three separate lines of business—referring internally to the tire sales and service business as "Truck Tire Sales 1," the weed-cutting business as "Truck Tire Sales 2," and the water main testing business as "Truck Tire Sales 4."[2] (Pls.' Rule 56.1 Statement of Material Facts ("Pls.' 56.1 Statement") [172] ¶ 3.) The Truck Tire Defendants respond that Truck Tire runs only one operation, with portions performing different types of work. (TTD 56.1 Resp. ¶ 3.) Notably, however, in faxes Edward Gomez himself has referred to his business as three "companies" working under the same FEIN. (TTD 56.1 Statement ¶¶ 21, 24.) He explained in his deposition that it was simpler not to incorporate the operations separately but that he "work[s] it [his business] individually." (Gomez Dep. at 27:1–6, Ex. C to City 56.1 Statement.)

## I. Overview of Truck Tire's Insurance Policies

Truck Tire had three separate commercial general liability ("CGL") insurance policies to cover its business operations. (TTD 56.1 Resp. ¶ 16.) The three CGL policies were with Plaintiff Ohio Security, Defendant Society, and Colony Insurance Company. The Truck Tire Defendants acknowledge that "Truck Tire had insured its tire sales and repair operations, its weed-cutting operations, and transportation operations with separate insurance policies," but assert that Gomez's main goal was to make sure that Truck Tire was fully insured. (*Id.*; *see also* Gomez Dep. at 69:1–10, Ex. 1 to Pls.' 56.1 Statement.) Richard Friedenberg of Klafter Northern Insurance, who acted as Truck Tire's insurance broker, testified in his deposition to his understanding that the three business operations were insured by three separate policies: Plaintiffs covered Truck Tire Sales (the tire sales and service operation), Society covered Truck Tire Sales 2 (the weed-cutting operation), and Colony covered Truck Tire Sales 4 (the water main transportation operation). (Truck Tire Defs.' Rule 56.1 Statement of Material Facts ("TTD 56.1 Statement") [175] ¶ 11; Pls.' 56.1 Statement ¶ 18.)

---

[2] All parties agree that there is no operation called Truck Tire Sales 3. (TTD 56.1 Resp. ¶ 15; Def. City Resp. to Pls.' 56.1 Statement ("City 56.1 Resp.") [190] ¶ 15.)

Plaintiff Ohio Security issued a CGL policy, number BKS 55698923, and Plaintiff Ohio Casualty issued a commercial umbrella policy, number USO 55698923, to the named insured "Truck Tire Sales, Inc." (Pls.' 56.1 Statement ¶¶ 1–2.) Plaintiffs' underwriter, Debby Clayton, testified at a deposition that it was her understanding that Plaintiffs' policies were "issued to cover the tire dealer." (*Id.* at ¶ 41.) Defendant Society issued a CGL policy with a $1 million per occurrence limit to the named insured "Truck Tire Sales, Inc. d/b/a Truck Tire Sales 2." (*Id.* at ¶¶ 4, 64.) Though the Society policy did not include language expressly limiting its coverage, Society's underwriter, Austin Beigel, testified that Society's policy was issued to insure only Truck Tire's weed-cutting operations. (TTD 56.1 Resp. ¶¶ 47, 48.) Truck Tire's broker, Friedenberg, testified that he obtained a third CGL policy from Colony Insurance to cover only Truck Tire's water main transportation operations. (*Id.* at ¶ 52.) The Colony policy contained a Business Description Limitation Endorsement that limited the scope of coverage for bodily injuries under its policy to those related to Truck Tire's water main transportation work with the City of Chicago. (TTD 56.1 Statement ¶ 50.)

As part of Truck Tire's weed-cutting contract with the City of Chicago, the City required Truck Tire to have $2 million of commercial general liability insurance and to name the City as an additional insured. (City 56.1 Statement ¶ 21.) The City of Chicago is named as an additional insured in the Society policy (that is, the one directed at weed-cutting operations), but not in Plaintiffs' policies or the Colony policy. (TTD 56.1 Resp. ¶ 59; City 56.1 Resp. ¶ 59.) In January 2014, Truck Tire provided a certificate of insurance to the City that identifies Society (but not Plaintiffs or Colony) as Truck Tire's general liability insurer. (Pls.' 56.1 Statement ¶ 77; City 56.1 Resp. ¶¶ 59, 64.) The amended certificate of insurance issued in January 2016 contains the same information. (TTD 56.1 Resp. ¶ 59.)

## II.    The *Lee* Lawsuit

On May 27, 2016, Defendant Eric Rice, an employee of Truck Tire, allegedly struck Julicia Lee and her daughter Samyra Lee while driving a Mahindra tractor owned by Truck Tire. (*Id.* at

4

¶ 68.)  Samyra Lee died as a result of the collision.  At the time of the accident, Rice was performing weed-cutting services in Chicago pursuant to Truck Tire's contract with the City.  (*Id.*)  Truck Tire hired Rice as a seasonal employee solely to perform weed-cutting services, and he had no responsibilities related to Truck Tire's tire sales and service or water main transportation work.  (*Id.* at ¶ 69.)  The Mahindra tractor Rice was driving was owned by Tire Truck in connection with its weed-cutting operations.[3]  (*Id.* at ¶ 70.)

After the incident, Defendant Julicia Lee sued Truck Tire, Rice, and the City, alleging wrongful death and negligence.  (Lee Compl. at 3, 5, Ex. D to Pls.' Am. Compl. [64-4].)  Friedenberg, on behalf of Truck Tire, tendered the Lee claim to Society on the day of the accident.  (TTD 56.1 Resp. ¶ 72.)  Society accepted the claim and agreed to provide a defense for Truck Tire in the *Lee* lawsuit.  (*Id.* at ¶ 74.)  Society later agreed to provide a defense to the City of Chicago as an additional insured under its policy.  (Pls.' 56.1 Statement ¶ 78.)  Society's claim adjuster, Julie Tubikanec, later asked Friedenberg to notify Truck Tire's other insurance companies of the incident.  (TTD 56.1 Resp. ¶ 75.)  On June 24, 2016 Friedenberg, on behalf of Truck Tire, notified Plaintiffs of the accident.  (Pls.' 56.1 Statement ¶ 75.)  The City tendered its claim to Plaintiffs on October 17, 2017.  (*Id.* at ¶ 79.)

On July 7, 2016, Friedenberg tendered the claim to Colony, as well.  (*Id.* at 76.)  Colony promptly sought and won a declaration from the Circuit Court of Cook County that the Lee accident was not covered by its policies.  (TTD 56.1 Resp. ¶ 53; *Colony Ins. Co. v. Truck Tire Sales, Inc.*, 2016 CH 12022 (Cook Cty. Ch. Ct. 2016).)  The state court concluded that the

---

[3]     The Truck Tire Defendants do not dispute this.  The City does dispute that Rice was hired only to perform weed-cutting services and that the Mahindra tractor was owned by Truck Tire for use in its weed-cutting work.  (City 56.1 Resp. ¶¶ 69–70.)  The City points out that Rice was hired by Truck Tire Sales, Inc.  The City does not otherwise challenge Plaintiffs' assertions concerning Rice's job responsibilities or the use of the tractor, and in support of its disagreement with Plaintiffs on this issue, cites only to Plaintiffs' Answer to the City's counterclaim.  In those paragraphs ([95] ¶¶ 24–25), Plaintiffs merely admit that Truck Tire's operations are not separately incorporated; they do not address whether the Mahindra tractor was involved in weed-cutting, as Edward Gomez himself testified.

Business Description Limitation in the policy, which limited insurance coverage to the business described in the policy (water main testing), was dispositive of the scope of coverage.  (Colony Tr. at 28, Ex. 15 to Pl's 56.1 Statement.)

III.    **Plaintiffs' Insurance Policies**

Plaintiffs' insurance policies were initially issued to Defendant Truck Tire Sales in 2013 and were renewed several times without an additional application.  (Pls.' 56.1 Statement ¶ 43.) Both of Plaintiffs' policies covered the period from July 24, 2015 to July 24, 2016 and were in effect at the time of the Lee accident in May 2016.  (*Id.*)

A.    **Ohio Security CGL Policy**

The CGL policy issued by Ohio Security consists of several parts: Common Policy Declarations pages, Common Policy Conditions, Coverage Parts, and other forms and endorsements.  (Ohio Security Policy at PageID #:2918, Ex. 4 to Pls.' 56.1 Statement.)  A page titled "Policyholder Information" in the Ohio Security insurance documents directs the policyholder, Truck Tire Sales, Inc., to refer to the declarations "[t]o find [its] specific coverages, limits of liability, and premium."  (*Id.* at PageID #:2904.)  The Commercial General Liability Declarations Schedule includes the underwriting classification code 18616, corresponding to the risk for "Tire Dealers," and includes no other underwriting classification codes.  (*Id.* at PageID #:2893.)  The declarations show that the premium for the Ohio Security CGL policy is based on gross sales of $2,399,754, an amount that accounts for revenues only from Truck Tire's tire sales and service activities, not its weed-cutting or water main transportation services.  (*Id.*; TTD 56.1 Resp. ¶ 25.)  The declarations further show that Ohio Security's Employment Practices Liability premium is based on Truck Tire's having 14 employees (Ohio Security Policy at PageID #:2897), the number for the tire sales and service operations at the time Friedenberg completed the insurance application.  (TTD 56.1 Resp. ¶ 26.)  The Commercial Property Declarations Schedule lists, in part, the premises and personal property covered by the policy and describes the premises

as "Mercantile – Sole Occupancy Only – Tire, Battery, and Accessory Dealers without Tire Recapping and Vulcanization." (Ohio Security Policy at PageID #:2887–90.)

The Commercial General Liability Coverage Form details the coverage provided by Plaintiffs to Truck Tire. Section II, defining who is an "insured" under the policy, refers back to the declarations, which identify Truck Tire Sales, Inc. as the named insured and describe the insured's business as "tire sales and service." (*Id.* at PageID #:2918, 2943.) Section I, Coverage A, explains that the insurer will provide coverage for bodily injury and property damage "caused by an 'occurrence' that takes place in the 'coverage territory,'" and "during the policy period." (*Id.* at PageID #:2934.) Section III of the Coverage Form defines the Limits of Insurance in reference to the declarations, which for Truck Tire's policy is $1,000,000 per occurrence, and $2,000,000 in the aggregate. (*Id.* at PageID #:2892, 2944.) Section IV of the Coverage Form imposes certain conditions that apply to the policy, including that "[b]y accepting this policy, [Truck Tire] agree[s] a. The statements in the Declarations are accurate and complete; b. Those statements are based upon representations you made to us; and c. We have issued this policy in reliance upon your representations."[4] (*Id.* at PageID #:2946.) The policy also includes a "Commercial General Liability Extension" that authorizes Truck Tire to add additional insureds to whom Truck Tire has agreed in writing to provide coverage, albeit without increasing the applicable policy limits. (*Id.* at PageID #:2965, 2967.)

B.    **Ohio Casualty Umbrella Policy**

The Ohio Casualty umbrella policy names Ohio Security's policy as the underlying commercial general liability insurance. (Ohio Casualty Policy at PageID #:3091, Ex. 5 to Pls.' 56.1 Statement.) The umbrella policy provides coverage only if "any 'Insured' or an 'Insured's'

---

[4]    The Commercial General Liability Extension (an endorsement to the policy) adds a provision to the Representations Condition stipulating that Truck Tire's "failure to disclose all hazards or prior 'occurrences' existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior 'occurrences' is not intentional." (*See* Ohio Security Policy at PageID #:2969.)

underlying insurer is obligated to pay the 'retained limit.'"  (*Id.* at PageID #:3132.)  Like the Ohio Security CGL policy, the "Policyholder Information" section of the umbrella policy directs the policyholder, Truck Tire Sales, Inc., to refer to the declarations "[t]o find [its] limits of insurance and premium," and directs the insured to its "policy for specific coverages."  (*Id.* at PageID #:3098.) Ohio Casualty's umbrella policy lists "TIRE SALES AND SERVICE" as the named insured's business.  (*Id.* at PageID #:3090.)  The Definitions Section of the Insuring Agreements define the Named Insured as any organization "listed in Item 1. of the Declarations," which is Truck Tire Sales, Inc.  (*Id.* at PageID #:3125.)  An endorsement amending the definition of an "insured" confirms that that the coverage provided by the umbrella policy to an additional insured "[w]ill not be broader than the coverage afforded by the applicable 'underlying insurance.'"  (*Id.* at PageID #:3157.)

### C.    Truck Tire's Insurance Application

Richard Friedenberg, Truck Tire's insurance broker, completed Truck Tire's application for insurance with Plaintiffs in 2013.  (TTD 56.1 Resp. ¶ 31.)  Plaintiffs and the Truck Tire Defendants agree that Friedenberg was seeking coverage from Plaintiffs for Truck Tire's tire sales and service operations.[5]  (*Id.* at ¶ 37.)  Friedenberg supplied information to Debby Clayton, Plaintiffs' underwriter, that enabled her to assess the risk posed by Truck Tire's operations and set a premium for the policies.  (Pls.' 56.1 Statement ¶ 31.)  The information in the application relates only to Truck Tire's tire sales and service operations including the premises, sales

---

[5]        The City disputes this fact, saying that Friedenberg intended to cover all of Truck Tire's operations, and citing the Friedenberg deposition 53:14–54:19.  (City 56.1 Resp. ¶ 37.)  But Friedenberg's testimony does not support the City's position:  "Q: Was it your intent, when acting as a broker for Truck Tire Sales 1, that the Ohio Security Policy would provide coverage for third-party liability caused by the operations of Truck Tire Sales' tire sales and service business?" Friedenberg responded "Yes."  (Friedenberg Dep. 53:14–20, Ex. 3 to Pls.' 56.1 Statement.)  The deposition continues: "And was it your intent, when acting as a broker for Truck Tire Sales, that the Ohio Security Policy would not provide coverage for accidents involving Truck Tire Sales 2 or Truck Tire Sales 4?"  Friedenberg responded, "Correct."  (*Id.* at 53:22–54:3.)

revenue, number of employees, and number of vehicles used in that operation.[6] (TTD 56.1 Resp. ¶ 31.) Friedenberg listed "Tire Sales and Services" in the "Nature of Business/Description of Operation By Premise(s)" field of the application. (Pls.' 56.1 Statement ¶ 32; Ins. Appl. at PageID #:3220, Ex. 10 to Pl's 56.1 Statement].) The Schedule of Hazards lists "Tire Dealers," and no other types of risks are included in the Schedule. (Ins. Appl. at PageID #:3235.) In the application field, asking whether the applicant had "any other business interests or activities . . . that are not identified or scheduled on this policy," Friedenberg answered "no." (*Id.* at PageID #:3223.) The application also asked, "Does insured own and operate other businesses?" to which Friedenberg responded "no." (*Id.* at PageID #:3236.)

### D. Plaintiffs' 2014 Policy Audit

In August 2014, Plaintiffs completed an audit of Truck Tire. The audit revealed that Truck Tire had "landscaping" and "transportation" operations in addition to the "tire dealer" operations. (TTD 56.1 Statement ¶ 31; Audit at 1, Ex. 11 to TTD 56.1 Statement.) The auditor's notes show that both the underwriter, Debby Clayton, and the insured intended Plaintiffs' policies to cover only the "tire dealer" operations. (Audit at 1.) The auditor nevertheless recommended that Clayton add an endorsement to the policy limiting coverage to the "tire dealer" operations. (TTD 56.1 Statement ¶¶ 36–37.) Clayton never added such an endorsement.

## IV. Motions for Summary Judgment

Counts I and II of Plaintiffs' amended complaint [64] are alleged against all Defendants[7] and seek a declaration that their CGL and umbrella policies insure only Truck Tire's tire sales and

---

[6] The City disputes that the information about the number of employees provided by Friedenberg was *identified* as only pertaining to the tire sales and service operations but does not dispute that Friedenberg listed 14 employees. (City 56.1 Resp. ¶ 33.) Truck Tire does not dispute that the information Friedenberg provided was the number of employees working for the tire sales and service operations alone. (TTD 56.1 Resp. ¶ 33.)

[7] Klafter Northern Insurance Service, Ltd., where Richard Friedenberg worked as a broker, was originally a defendant in this action. This court granted Klafter's motion to dismiss [91] certain counts against it in an earlier order [107]. Then, after Friedenberg testified at his

service operations.  In the alternative to Counts I and II, Counts III and IV are alleged only against Defendant Truck Tire and seek reformation of the CGL and umbrella policies based on mutual mistake.  In the alternative, Count V alleges fraudulent misrepresentation and Count VI alleges negligent misrepresentation against Defendant Truck Tire.  Also in the alternative to Counts I through IV, Plaintiffs seek reformation of the Truck Tire policies based on unilateral mistake and fraud in Counts VII and VIII.  Defendant City of Chicago filed a counterclaim against Plaintiffs seeking a declaration that the City is an additional insured under Plaintiffs' policies, and as a result, that Plaintiffs have a duty to defend the City in the *Lee* lawsuit.  (City of Chicago Answer & Countercl. [81] at 74.)

Plaintiffs move for summary judgment on Counts I through IV and on Defendant City of Chicago's counterclaim.  Their motion seeks a declaration that Plaintiffs' policies do not cover Truck Tire's weed-cutting operations, that the City is not an additional insured under these policies, and that Plaintiffs have no duty to defend or indemnify Truck Tire or any other Defendant in the *Lee* lawsuit.  Defendants Truck Tire Sales, Eric Rice, and Society Insurance seek summary judgment on all counts of Plaintiffs' amended complaint.  The Truck Tire Defendants argue that Plaintiffs' policies do cover all of Truck Tire's business operations because of the broad insuring agreements and the lack of any language expressly limiting coverage to Truck Tire's tire dealer operations or excluding Truck Tire's weed-cutting operations.  (Truck Tire Defs.' Mot. for Summ. J. ("TTD MSJ") [174] at 1.)  Defendant and Counter-Plaintiff City of Chicago seeks summary judgment on the claims against the City and on the City's counterclaim for a declaratory judgment against Plaintiffs.  The City argues that the plain terms of Plaintiffs' policies provide coverage for the City as an additional insured in connection with the *Lee* lawsuit.  With respect to Plaintiffs'

---

deposition that he intended to purchase insurance with Plaintiffs only to cover Truck Tire's tire sales and service operations, Plaintiffs voluntarily moved to dismiss their remaining claims against Klafter Northern [125], and the court granted that motion on August 20, 2018 [129].  There are no other claims against Klafter Northern.  Additionally, Plaintiffs joined Julicia Lee solely to be bound by the court's judgment and seek no affirmative relief against her.  (Am. Compl. [64] ¶ 8.)

alternative claim for reformation of the policies, the City argues that there can be no reformation that would preclude coverage for the City because it is an innocent third party with vested rights under the policies, and any such reformation would violate a public policy against diverting public funds to paying damages claims.  (City of Chicago Mot. for Summ. J. ("City MSJ") [178] at 1, 13.)

### DISCUSSION

Plaintiffs bring this suit as a diversity action, and the parties agree that the substantive law of Illinois governs.  Under Illinois law, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment."  *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1078 (Ill. 1993)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  On cross-motions for summary judgment, the court "construe[s] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made."  *BASF AG*, 522 F.3d at 818.

"A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy."  *Valley Forge Ins. Co. v. Swiderski Elec., Inc.*, 223 Ill. 2d 352, 362, 860 N.E.2d 307, 314 (Ill. 2006) (citing *Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078).  Insurance policies are construed like any contract—as a whole, and "giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose."  *Valley Forge*, 223 Ill. 2d at 362, 860 N.E.2d at 314 (citing *Central Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (Ill. 2004)).  In particular, the court should consider "the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."  *Crum & Forster*, 156 Ill. 2d at 391,

620 N.E.2d at 1078; *see also Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 416, 860 N.E.2d 280, 286 (Ill. 2006).

If the words in the insurance policy, "given their plain and ordinary meaning, are unambiguous, they must be applied as written." *Valley Forge*, 223 Ill. 2d at 363, 860 N.E.2d at 314 (citing *Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078). If, however, the words used in the policy are ambiguous, "they will be strictly construed against the insurer, who drafted the policy, and liberally in favor of coverage for the insured." *Nicor*, 223 Ill. 2d at 417, 860 N.E.2d at 286; *see also Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 23, 823 N.E.2d 561, 564 (Ill. 2005) ("Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous."). "Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none." *Valley Forge*, 223 Ill. 2d at 363, 860 N.E.2d at 314 (internal citations omitted). Moreover, a court should not interpret insurance contracts "in a factual vacuum." *Nicor*, 223 Ill. 2d at 417, 860 N.E.2d at 286. "A policy term that appears unambiguous at first blush might not be such when viewed in the context of the particular factual setting in which the policy was issued." *Id.*

Under Illinois law, provisions in the declarations of an insurance contract may provide evidence of party intent to "limit the scope of an insurance policy."[8] *Westfield Ins. Co. v.*

_____

[8]    The Truck Tire Defendants cite a Missouri case for the proposition that policy declarations cannot limit the scope of insurance coverage. *See Geico Cas. Co. v. Clampitt*, 521 S.W.3d 290, 293 (Mo. App. 2017) ("[D]eclarations pages do not grant any coverage but are introductory only and subject to refinement and definition in the body of the policy . . . when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage."). Illinois law differs: Illinois courts routinely use the declarations to ascertain the intended scope of an insurance policy. *See, e.g., Progressive Premier Ins. Co. of Ill. v. Kocher ex rel. Fleming*, 402 Ill. App. 3d 756, 762, 932 N.E.2d 1094, 1100 (5th Dist. 2010). The parties also cite *Allegheny Airlines, Inc. v. Forth Corp.*, 663 F.2d 751 (7th Cir. 1981), and *Lott v. Scottsdale Insurance, Co.*, 827 F. Supp. 2d 626 (E.D. Va. 2011), to support their differing views of the importance of declarations pages for interpretation of insurance contracts. As Illinois law provides guidance on this point, the court declines to consider the law of other states in detail.

*Vandenberg*, 796 F.3d 773, 778 (7th Cir. 2015) (citing *Heritage Ins. Co. v. Bucaro*, 101 Ill. App. 3d 919, 923, 428 N.E.2d 979, 982 (5th Dist. 1981)). This is because "[t]he declarations page— which lists the types of coverage provided and the policy limits and premiums for each—is part of the insurance contract," and contracts must be construed in a way that gives effect to every provision. *Rumick v. Liberty Mutual Ins. Co.*, No. 17 C 2403, 2018 WL 3740654, at *3 n.2 (N.D. Ill. Aug. 6, 2018) (quoting *Progressive Premier Ins. Co. of Ill. v. Kocher ex rel. Fleming*, 402 Ill. App. 3d 756, 761, 932 N.E.2d 1094, 1098 (5th Dist. 2010)); *see also Alshwaiyat v. Am. Serv. Ins. Co.*, 2013 IL App (1st) 123222, ¶ 33, 986 N.E.2d 182, 191 (2013) ("Illinois courts have long recognized that an insurance contract includes the printed form policy, declarations, and any endorsements.").

A policy's declarations page cannot be interpreted in isolation because it "is but one piece of the insuring agreement" and "cannot address every conceivable coverage issue." *Hobbs*, 214 Ill. 2d at 23, 823 N.E.2d at 567. But because the declarations page "contains important information specific to the policyholder," courts applying Illinois law consistently refer to the declarations to determine whether disputed claims are covered. *See Hobbs*, 214 Ill. 2d at 23, 823 N.E.2d at 567–68. Importantly for this case, Plaintiff Ohio Security's contract specifies that the declarations should be considered part of its policy along with the coverage parts, forms, endorsements, and conditions.[9] (Ohio Security Policy at PageID #:2918); *see also Smith v. Burlington Ins. Co.*, No. 17-CV-58-JHP-FHM, 2018 WL 1569498, at *5 n.4 (N.D. Okla. Mar. 30, 2018), *aff'd* 772 F. App'x 723 (10th Cir. 2019); *Gemini Ins. Co. v. S & J Diving, Inc.*, 464 F. Supp. 2d 641, 649 n.4 (S.D. Tex. 2006) (concluding that provisions similar to those in the Ohio Security

---

[9] The Ohio Casualty umbrella policy does distinguish the declarations from the policy: "To find your limits of insurance and premium please refer to your Declarations page(s). Please refer to your policy for specific coverage." (Ohio Casualty Policy at PageID #:3098.) Defendant City notes, further, that another page of the contract warns that "[o]nly the provisions of your policy determine the scope of your insurance protection." (*Id.* at PageID #:3099.) But this is in the context of a statement that the "Notice to Policyholder" page is not part of the policy, and is not a suggestion that the policyholder may otherwise ignore the declarations.

contract integrate the declarations into the policy).  Accordingly, to determine whether the *Lee* lawsuit falls within the scope of coverage provided by Plaintiffs' policies, this court must construe together the coverage forms, any exclusions, and the declarations pages.

I.      **The Scope of Coverage Provided by Plaintiffs' Policies**

The court notes, initially, that Ohio Casualty's umbrella policy is coextensive with Ohio Security's CGL policy.  The umbrella policy's coverage, by its terms, applies only if Truck Tire or Ohio Security, as the underlying insurer, is "obligated to pay the 'retained limit.'"  (Ohio Casualty Policy at PageID #:3132.)  And the "retained limit," as applies here, is "the total amount[ ] stated as the applicable limits" of Ohio Security's CGL policy.  (*Id.* at PageID #:3121.)  The primary issue in this case, therefore, is whether the language of the CGL policy issued by Ohio Security to Truck Tire limits the policy's coverage to tire sales and service operations, or whether Ohio Security's policy, instead, covers all of Truck Tire's operations.

Plaintiffs argue that their insurance policies do not apply to the *Lee* lawsuit because the policy language and the intent of the parties at the time of contracting reflect that Plaintiffs agreed to provide coverage only for liabilities arising out of Truck Tire's tire sales and service operations. The Truck Tire Defendants and Defendant City, on the other hand, emphasize that the named insured in Plaintiffs' policies is Truck Tire Sales, Inc. and, because there is no language in either contract that specifically conditions, limits, or restricts coverage to the classification codes or business description in the declarations, Plaintiffs must provide coverage for all of Truck Tire's business activities.

A.      **Ohio Security's CGL Policy Covers Tire Operations Only.**

As the Seventh Circuit confirmed in *Vandenberg*, the business description and information provided in a general liability schedule (a section of the declarations) can provide evidence of

party intent to limit the scope of insurance coverage.[10] *Vandenberg* affirmed a judgment on the pleadings denying insurance coverage for injuries suffered by Scot Vandenberg in a fall from the top deck of a yacht owned by RQM, Inc. *Vandenberg*, 796 F.3d at 775. RQM was a closely-held corporation whose part-owner also owned a concrete construction company called Rose Paving Company. *Id.* Rose Paving allegedly acted as a booking agent and marketer for the yacht charters, so Vandenberg sought coverage for his injuries from Rose Paving's insurer, Westfield Insurance Company. *Id.* Vandenberg argued that the "business designation" in the declarations, "on its own, [was] insufficient to limit the scope of the policies," whereas the insurer asserted that its policies plainly "appl[ied] only to Rose Paving's construction business." *Id.* at 777.

In reviewing a judgment on the pleadings, the Seventh Circuit examined the common policy declarations and the general liability schedule. The insurance policy in *Vandenberg* provided that, "by accepting coverage, Rose Paving agreed that '[t]he statements in the Declarations are accurate and complete,' that '[t]hose statements are based upon representations' Rose Paving made to Westfield, and that Westfield 'issued th[e] policy in reliance upon [those] representations.'" *Id.* at 776. The declarations listed the insured's business as "concrete construction," and the general liability schedule listed the risks covered by the contract as "'contractors' and 'subcontracted work—in connection with construction, reconstruction, repair or erection of buildings.'" *Id.* at 775. Because the insured represented that the policy declarations were accurate and complete, and the declarations described only construction-related operations, the Seventh Circuit affirmed the judgment for the insurer, noting that the policies reflected "explicitly, the parties' intent to insure only Rose Paving's construction business." *Id.* at 778.

---

[10]      The *Vandenberg* court's reasoning also illustrates that, in determining whether parties intended to limit the scope of coverage, a court is free to consider the policy's declaration page even if provisions in the body of the policy do not specifically integrate particular declarations. Indeed, Illinois courts occasionally use factors such as the layout of policy declarations to discern party intent—a factor that would be difficult to specifically incorporate into the body of the policy. *See, e.g., Fleming*, 402 Ill. App. 3d at 761, 932 N.E.2d at 1099.

In *Bucaro*, a case cited in V*andenberg*, an Illinois Appellate court used a similar methodology and relied on similar representations in the policy declarations to interpret the scope of coverage. The dispute there concerned whether an insurance policy covered an automobile accident caused by someone who stole a vehicle from the insured's place of business. Affirming a judgment for the insurer, the court found it "evident that the policy provides coverage only for occurrences arising out of the specified activities taking place on the insured premises." *Bucaro*, 101 Ill. App. 3d at 924, 428 N.E.2d at 982. The hazards described in the general liability schedule were "Automobile Dismantling-including salvage or junking of parts, and store operations," and the business of the insured was described as "Automobile Dismantling." *Id.* at 922, 428 N.E.2d at 981. The court explained that the "activities enumerated in the policy concern operations relating to automobile dismantling," but not "occurrences dealing with automobile acquisitions." *Id.* at 923, 429 N.E.2d at 982. Because the insured's alleged negligence was related only to its automobile acquisition activities, and "[d]ue to the limited nature of the policy purchased," the court reasoned that "it [was] implausible to assume that protection was expected for liability of the type that ha[d] been created." *Id.* at 924, 429 N.E.2d at 982.

*Vandenberg* also cited cases from other jurisdictions that limited the scope of insurance coverage based on the business description and information in the declarations about the covered risks. In *Cooper*, for example, a Connecticut court found that a policy issued to a restaurant that operated at a marina and leased marina property did not cover an alleged fall on a gangway. *Cooper v. RLI Ins. Co.*, No. CV 9403617128, 1996 WL 367721, at *1 (Conn. Super. Ct. June 3, 1996). The court explained its conclusion by differentiating the insured's operations: "the plaintiff fell on the premises but at a separate business operation on those premises, a marina, separate that is from the business the company claims was insured—a restaurant." *Id.* at *8. The business description ("Restaurant") and premium calculation (based on sales volume and risk classification for the restaurant) listed in the declarations, as well as the information the insured supplied in its

application, satisfied the court that the insured sought coverage only for a restaurant business. *Id.* at *4–6.

Similarly, in *Charter Oak*, a California court held that an insurance policy issued to the insured "doing business as" a hotel in Arkansas did not cover townhomes that the insured owned in California. *Fidelity & Deposit Co. of Maryland v. Charter Oak Fire Ins. Co.*, 78 Cal. Rptr. 2d 429, 432 (Cal. Ct. App. 1998). The court noted that the "insured's payment of a relatively small premium suggest[ed] that [the insurer] provided coverage for the relatively small risks associated with the [motel], not the much larger risks associated with all of [the insured's] projects." *Id.*; *cf. Mt. Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 239 (2d Cir. 2002) (finding an insurer's policy calculations insufficient evidence of intent to limit the scope of insurance coverage). Additionally, in *Dobbas*, a California court determined that an insurance policy issued to cover the insured's railroad contractor business did not cover injuries and a death caused after a bull owned by the insured in connection with his livestock-husbandry activities escaped from a ranch into the road. *Steadfast Ins. Co. v. Dobbas*, No. CV S-05-0632 FCD JFM, 2008 WL 324023, at *6–7 (E.D. Cal. Feb. 5, 2008).

The policy considered in *Gemini Insurance* was issued to a "company engaged in diving, and other marine operations." 464 F. Supp. 2d at 650. Referencing that language, the Texas federal district court explained that it was not reasonable to infer that an insurance policy covered all activity not specifically excluded from a policy "when the insured negotiated as, and described itself to be, a marine operation." *Id.* ("[The insured's] 'declaration' of its business purpose limits the available coverage to a marine operation's typical undertakings."). Based on the business description and premium calculation shown in the declarations, the court determined that the policy did not cover a sexual assault that occurred at a three-day music festival and motorcycle rally produced by an entity that allegedly was the alter-ego of the named insured and its owners. *Id.* at 644, 650.

In the case before this court, similarly, the Ohio Security and Ohio Casualty policies display an intent to insure Truck Tire only for liabilities arising out of its tire sales and service operations. Ohio Security's CGL policy states that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Ohio Security Policy at PageID #:2934.) Section II of the Coverage Form references the declarations to define who is covered by the policy. (*Id.* at PageID #:2943.) Together, the Coverage Form and declarations indicate that Truck Tire Sales, Inc., a corporation whose business is "tire sales and service," is the insured.[11] (*Id.* at PageID #:2918); *see also Smith*, 2018 WL 1569498, at *2 (finding it "unreasonable" to construe an insurance policy to cover damages for wrongful death arising out of the insured's armed security business when the coverage form and declarations identified an individual as the insured for the conduct of his business, described as a "courier service").

The Ohio Security policy contains representations identical to those in *Vandenberg*: Truck Tire attested that "[t]he statements in the Declarations are accurate and complete," that "[t]hose statements are based upon representations" Truck Tire made to Ohio Security, and that Ohio Security "issued the policy in reliance upon [those] representations." (Ohio Security Policy at PageID #:2946.) There is no mention in the policy of weed-cutting operations. Rather, the general liability schedule classifies the insured risk as only "Tire Dealers," and calculates the policy premium based on the gross sales and number of employees exclusively from Truck Tire's tire sales and service activities. (*Id.* at PageID #:2893, 2897.) As a whole, the policy reflects that it was sought for the purpose of insuring Truck Tire's activities related only to tire sales and services.

---

[11] Although the court need not decide the issue, Eric Rice, whom the parties have stipulated is a seasonal employee (TTD 56.1 Resp. ¶ 69; City 56.1 Resp. ¶ 69), may not be an "insured" under the Ohio Security CGL policy. (*Cf.* TTD MSJ at 8.) Under the policy's terms, employees are insured for "acts within the scope of their employment" or "while performing duties related to the conduct of [the insured's] business." (Ohio Security Policy at PageID #:2943.) The policy defines "employee" as including a "leased worker," but not a "temporary worker," that is, "a person who is furnished to [the insured] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (*Id.* at PageID #:2947, 2950.)

The policy references exclusively those operations, and Truck Tire represented that this information was a complete and accurate description of its business and associated risks. *See Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078 (explaining that courts must consider the "subject matter that is insured and the purposes of the entire contract").

The Truck Tire and City Defendants argue that, because CGL policies provide broad coverage, they "cover any loss falling within their Insurance Agreement unless an exclusion prevents coverage." (Truck Tire Defs.' Resp. to Pls.' Mot. for Summ. J. ("TTD Resp.") [186] at 6; *see also* City MSJ at 6.) In *Vandenberg*, however, the Seventh Circuit rejected as a matter of Illinois law the "contention that [ ] policies provide coverage for any and all liabilities unless they are explicitly excluded."[12] *Vandenberg*, 796 F.3d at 779. When the "text and structure" of an insurance policy express the parties' intention to insure against only certain types of risk, for example the "risks of operating a construction company," the policy need not "exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement." *Id.* Only if the parties intend "to exclude a risk associated with running" the type of business that is covered, must they "recite[ ] that exclusion in the contract." *Id.*; *see also Dash Messenger Serv., Inc. v. Hartford Ins. Co. of Illinois*, 221 Ill. App. 3d 1007, 1014, 582 N.E.2d 1257, 1263 (1st Dist. 1991) (citing *Canadian Radium & Uranium Corp. v. Indem. Ins. Co.*, 411 Ill. 325, 334–35, 104 N.E.2d 250, 255 (Ill. 1952); *Triple-X Chem. Lab., Inc. v. Great Am. Ins. Co.*, 54 Ill. App. 3d 676, 679, 370 N.E.2d 70, 72 (1st Dist. 1977)) ("In Illinois . . . if an insurer does not intend to insure against a risk likely to be inherent in the insured's business, the insurer should expressly exclude that risk from the coverage of the policy.").

*Oakley Transport, Inc. v. Zurich Insurance Co.*, cited by the City, does not require a different conclusion. 271 Ill. App. 3d 716, 648 N.E.2d 1099 (1st Dist. 1995). In *Oakley*, the Illinois

---

[12]    A watercraft exclusion in the policy in *Vandenberg* independently precluded coverage for the victim's injuries, but the court was clear that the policy would not have provided coverage for the yacht accident, even absent that exclusion. *Vandenberg*, 796 F.3d at 780.

Appellate court explained that "[s]tandard commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks." *Id.* at 726, 648 N.E.2d at 1107. The City cites *Oakley* to support its contention that all of Truck Tire's business operations are covered under Plaintiffs' policies unless otherwise excluded. (City MSJ at 6.) There is, however, no indication that the *Oakley* court used "business" to mean "legal entity" rather than "activities" or types of risk. Naming the insured as "Truck Tire Sales, Inc." does not demonstrate an intent to cover all the corporation's risks, including those arising out of a collision between a tractor and a pedestrian on a city street, when the named insured's business is described only as tire sales and service.

Truck Tire also relies on *Dash,* where a bicycle messenger service sought coverage for injuries suffered by a pedestrian who had been struck by the messenger service's employee. 221 Ill. App.3d at 1008, 582 N.E.2d at 1259. The insurer argued that the accident was not covered by the "Premises and Related Operations in Progress" portion of the policy because it did not occur at the insured's premises, an office, or on the streets adjoining the office. *Id.* at 1014, 582 N.E.2d at 1263. The Illinois Appellate court disagreed; reversing summary judgment in favor of the insurer, the court explained that a business known as "Dash Messenger Service," and described as a bicycle messenger service, provides reasonable notice of the risk of an off-premises bicycle accident: "[I]f an insurer does not intend to insure against a risk likely to be inherent in the insured's business, the insurer should expressly exclude that risk from the coverage of the policy," the court observed. Id at 1014, 582 N.E.2d at 1263. Citing that language, Defendants urge that Plaintiffs must provide coverage for claims they did not specifically exclude. (TTD MSJ at 13.)

That argument ignores other provisions in the CGL policy, as well as the *Dash* court's reference to risks "inherent in the insured's business." The *Vandenberg* court emphasized that concept in concluding that an insurer who provided coverage for concrete construction operations would not reasonably have contemplated the risk of a person being injured on a yacht.

Defendants emphasize the "vast difference" between construction and yacht charters (TTD MSJ at 13), but this court does not share the view that the difference between tire sales and weed-cutting is less meaningful. The risk of injuries to pedestrians from a collision with a tractor used to perform weed cutting operations for a city is not the type of risk "likely to be inherent in" selling or servicing tires and is therefore not the type of risk that an "insurer should expressly exclude" to limit coverage. *Cf. Dash*, 221 Ill. App. 3d at 1014, 582 N.E.2d at 1263. In describing what risks an insurer must expressly exclude, *Dash* focused on reasonable inferences that could be drawn from information provided by the insured, including the "name of the applicant and the description of the business in the application." *Id.* at 1015, 582 N.E.2d at 1263. In the case before this court, the name "Truck Tire Sales" and business description "Tire Sales and Service" would not alert an insurer of risks related to weed cutting.

The court in *Dash* also recognized that insurers can be expected to inquire into the risks inherent to the businesses they insure. *Id.* at 1015, 582 N.E.2d at 1263, (citing *Triple-X*, 54 Ill. App. 3d at 679–80, 370 N.E.2d at 72–73). The Truck Tire Defendants point out that Plaintiffs' audit in August 2014 revealed that Truck Tire conducted "landscaping" and "transportation" operations in addition to the known "tire dealer" operations. (TTD 56.1 Statement ¶ 31.) Assuming that Plaintiffs were indeed on notice at that point of Truck Tire's other operations, and could have added language to the policy expressly limiting its scope to the tire sales and service operations, this notice did not alter the plain language of the policies, nor did it expand the nature of the risks inherent to the covered tire sales and service activities.[13] Adding an endorsement

---

[13] The Truck Tire Defendants' suggestion that insurance policies issued to Truck Tire by other affiliates of Liberty Mutual Insurance prior to 2013 provided notice to Plaintiffs of Truck Tire's full operations also does not change this analysis. (*See* TTD MSJ at 3.) In any case, considering evidence extrinsic to the contract under consideration here would not ultimately help the Defendants in these circumstances: Truck Tire operated three businesses (tire sales and service, weed-cutting, and water main testing) for which it purchased three separate CGL policies (Ohio Casualty, Society, and Colony). The most obvious inference is that Truck Tire expected to look to Society alone for coverage of accidents arising out of its weed-cutting operations—as

clearly limiting coverage to the designated business operations might have been helpful, but both

parties' experts agreed that such an endorsement is not the only way to limit coverage (Alberts

Dep. 58:4–7, Ex. D to City 56.1 Resp.; Huszagh Dep. 95:5–21, Ex. F to City 56.1 Resp.; Hager

Dep. 133:5–25, Ex. G to City 56.1 Resp.); *see Vandenberg*, 796 F.3d at 779 ("A policy does not

need to exclude from coverage liability that was not contemplated by the parties and not intended

to be covered under their agreement.").  In sum, because Plaintiffs' policies, as written, cover only

risks associated with the described business "tire sales and service," the fact that Plaintiffs learned

of Truck Tire's other operations does not establish that Plaintiffs agreed to cover risks associated

with those unrelated operations unless they added an exclusion removing them from coverage.[14]

*See Fidelity & Cas. Co. of New York v. Napleton Motor Sales, Inc.*, 5 Ill. App. 3d 705, 707, 284

N.E.2d 26, 28 (1st Dist. 1972) ("The plaintiff insured only garage-related activities, and the

knowledge that there were other operations going on does not extend the coverage of the

policy.").

### B.     Truck Tire's Insurance Application Confirms the Policies' Limited Scope.

Normally an application for insurance is considered extrinsic to the policy, and a court will

not use it to interpret the contract's language absent a facial ambiguity.  *See Newman v. Metro.

Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018) (citing *CAN Cas. of California v. E.C. Fackler,

Inc.*, 361 Ill. App. 2d 619, 624, 836 N.E.2d 732, 736 (1st Dist. 2005)).  When the application is

integrated into the insurance policy itself, however, the information provided by the applicant is

---

indeed, it did, until Society prompted Truck Tire, more than a year after the accident, to assert
claims against other policies.

[14]     The lack of an explicit exclusion or limitation in Plaintiffs' policies does not warrant
construing the policy against the insurer and in favor of coverage when the existing policy
language is unambiguous.  *See Hobbs*, 214 Ill. 2d at 23, 823 N.E.2d at 564.  Nor does the absence
of language elsewhere in the policy specifically limiting coverage to particular provisions in the
declarations create a conflict between the declarations and the body of the policy.  (*Cf.* City Reply
in Supp. of Mot. for Summ. J. ("City MSJ Reply") [192] at 4–5 (citing *Lehrhoff v. Aetna Cas. & Sur.
Co.*, 638 A.2d 889, 894 (N.J. Super. Ct. App. Div. 1994); *Zacarias v. Allstate Ins. Co.*, 168 N.J.
590, 602–03 (N.J. 2001)).)

not extrinsic to the contract and may be probative evidence of contracting intent. *Vandenberg*, 796 F.3d at 778 (quoting *A.D. Desmond Co. v. Jackson Nat'l Life Ins. Co.*, 223 Ill. App. 3d 616, 619, 585 N.E.2d 1120, 1122 (2d Dist. 1992) ("When, as in this case, an insurance policy is issued which makes the application for insurance part of the policy, the application becomes and is construed as part of the entire insurance contract.")).

In *Vandenberg*, representations by the insured in its application for insurance were integrated into the contract and supported the court's interpretation that the policy covered only Rose Paving's construction operations. *Vandenberg*, 796 F.3d at 778. The court noted provisions in the policy reciting that "'[t]he statements in the Declarations are accurate and complete,' that '[t]hose statements are based upon representations' [the insured] made to [the insurer], and that [the insurer] 'issued th[e] policy in reliance upon [those] representations'"; those provisions had the effect of incorporating statements from the application into the insurance contract. *Id.* at 778–79. In its application, Rose Paving had stated that it was "engaged in the construction business," and as a result, the schedule of hazards in the policy listed as risks, "concrete construction," "Contractors Executive Supervisors," and "subcontractors." *Id.* at 779. The court read these representations as probative of Rose Paving's intent to buy, and Westfield's intent to provide, insurance only for Rose Paving's paving and construction operations, but noted that the language of the policy itself was sufficient to support a finding in favor of the insurer.

Truck Tire's insurance application similarly demonstrates an intent to seek coverage only for its tire sales and servicing operations. Ohio Security's CGL policy contains the same representations that *Vandenberg* cited as incorporating statements from the application into the policy. (*See* Ohio Security Policy at PageID #:2946.) Richard Friedenberg, acting as a broker for Truck Tire, listed "Tire Sales and Services" as the nature of the insured's business, included only "Tire Dealers" as the involved hazards, and listed the employees and sales figures only for the tire sales and service operations. Friedenberg also represented that Truck Tire had no other

business interests or activities that were not identified in the application.[15]  As a result, Plaintiff Ohio Security's policy classifies the risk covered as "Tire Dealers" and calculated the premium based on the employees and sales associated only with the tire operations.  The insurance application reinforces this court's conclusion that the parties did not intend to enter a contract providing coverage for an accident arising out of Truck Tire's weed-cutting work.

### C.    Other Potential Objections are Overruled.

The Truck Tire Defendants also rely on a district court opinion, *Philadelphia Indemnity Insurance Co. v. 1801 West Irving Park, LLC*, to distinguish *Vandenberg*, arguing that the scope of insurance coverage is not restricted solely by the underwriting codes and the business designation found in the declarations.[16]  No. 11 C 1710, 2012 WL 3482260, *3 (N.D. Ill. Aug. 13, 2012).  In *Philadelphia Indemnity*, the named insured, 1801 West Irving LLC, was a condominium developer that temporarily managed the condominium association of a property it developed.  *Id.* at *2.  The Common Policy Declarations of the insurance policy listed the business description as "Condominium Association" and did not contain any "express exclusion limiting coverage to acts committed in the course" of the insured's activities as a condominium association.  *Id.*  The underlying lawsuit contained allegations against 1801 West Irving both in its capacity as a developer and in its capacity as a member of the condominium association.  The district court held that "the specified business description of 'condominium association' does not on its own limit the coverage available under the policies to only those activities of [the named insured] that relate to its status as manager and/or member of a condo association."  *Id.* at *3.  To eliminate

---

[15]    The court is not persuaded by Truck Tire Defendants' effort to distance themselves from Mr. Friedenberg's representations.  (Truck Tire Defs.' MSJ Reply [193] at 12.)  Friedenberg was Truck Tire's insurance broker, and a broker is "an agent for the buyer of the insurance policy." *Broker*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Moreover, in accepting coverage from Plaintiffs, Truck Tire affirmed that the statements in the declarations, which are based on the information provided in the application, are based on its own representations to Ohio Security. (Ohio Security Policy at PageID #:2946.)

[16]    The City Defendant cites neither *Vandenberg* nor *Philadelphia Indemnity* in its briefing, so this Part references only the Truck Tire Defendants' arguments.

liability for the insured's development activities, the court explained, the policy would have to incorporate a specific exclusion, limiting coverage to "acts committed in the course of the activity described in the Business Description section of the Declarations." *Id.* at *5.

*Philadelphia Indemnity* is not binding authority, and predates *Vandenberg*, in which the Seventh Circuit declined to decide whether the business description in the declarations, standing alone, could "be a sufficient indication of party intent to circumscribe the scope of an insurance agreement." *Vandenberg*, 796 F.3d at 779. The court did not need to make that determination because it had evidence of party intent going beyond the insured's business description: "the business designation and the general liability schedule contained in the contract, as well as the incorporated representations in the insurance application" together provided enough evidence of party intent to limit the scope of the insurance agreement. *Id.* Similarly, in this case, the court need not rest its conclusion on the business description alone. That description, the general liability schedule, and the insurance application, together with the rest of the insurance policy, "express, uniformly, the parties' intent to limit the scope of the insurance policies to [Truck Tire's] known business": tire sales and service.[17] *Id.*

In contrast with *Philadelphia Indemnity*'s conclusions, *Vandenberg* made clear that "[a] policy does not need to exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement." *Vandenberg*, 796 F.3d at 779. It is only when the parties intend to exclude a risk inherent in the insured's covered business that the

_____

[17] *GRE Ins. Group v. Metropolitan Boston Housing Partnership*, cited by the Truck Tire Defendants, is distinguishable, as well. 61 F.3d 79 (1st Cir. 1995). In *GRE*, the court recognized that the business description in a policy's declarations was "obviously relevant to coverage" under Massachusetts law, but was not dispositive. *Id.* at 82. The premium and hazards information in the declarations appeared to impose limitations, but that information conflicted with statements in the insurance application and an endorsement that would have been unnecessary had the coverage been limited in the manner argued by the insurer. *Id.* at 83. Finding disputes of fact concerning the duty to indemnify, the court reversed a summary judgment, found the insurer had a duty to defend, and remanded the case. *Id.* at 86.

exclusion needs to be clearly recited in the contract.[18] *Id.* (citing *Dash*, 221 Ill. App. 3d at 1014, 542 N.E.2d at 1263). Therefore, Ohio Security needed to expressly limit its coverage to risks arising out of Truck Tire's tire sales and services activities only if weed-cutting or the transportation of water main employees are considered inherent risks of tire sales and services, which, as explained earlier, they are not.

*Philadelphia Indemnity* is distinguishable for another reason, as well. The insured in that case "did not own and operate multiple separate businesses, only one of which was insured." 2012 WL 3482260, at *5. "Rather, 1801 was a single entity that performed multiple services as a part of its condominium development business—which was a named insured on the Policies." *Id.* The insured entity in *Vandenberg,* in contrast, "operated multiple independent businesses (paving and yacht charters), purchased insurance for only one of those businesses (paving), and later sought coverage for a different business (yacht charters)." 796 F.3d at 779. The insured's formal organizational structure has some significance to this distinction, but what is more important is the nature of the business for which the insured purchased coverage and the activities associated with the business described in the policy. *See Smith*, 2018 WL 1569498, at *4 (explaining that insurance coverage does not extend to "a business operation that [is] completely separate and different in nature than the business described in the policy").

In short, a CGL "policy does not provide coverage for accidents associated with business activity different from the business activity for which coverage was initially sought." *Cooper*, 1996 WL 367721, at *8. To be covered, a loss must be "caused by an accident which normally could be expected to occur in the particular activity in which the business is engaged." *Id.* at *3. *Cooper*, *Charter Oak*, and *Dobbas,* discussed above, involved independent businesses. Thus in *Cooper*,

---

[18] *Mt. Vernon Fire Ins. Co. v. Belize NY, Inc.*, a Second Circuit case cited by Defendants, is distinguishable for the same reason. In that case, the Second Circuit held as a matter of New York law "that a business description in a Commercial General Liability policy's declarations page does not restrict the available coverage absent a specific exclusion to that effect." *Philadelphia Indem.*, 2012 WL 3482260, at *3 (citing *Mt. Vernon*, 277 F.3d at 239). *Mt. Vernon,* like *Philadelphia Indemnity,* pre-dates the Seventh Circuit's decision in *Vandenberg.*

a policy issued to a restaurant did not cover marina property it leased, even though the restaurant and marina shared ownership. *Id.* at *4–5. In *Charter Oak*, a policy issued to a company operating a motel in Arkansas did not cover townhomes owned by the company in California. *Charter Oak*, 78 Cal. Rptr. 2d at 432. And in *Dobbas*, the insured's animal-husbandry activities were not covered by a policy issued to cover his activities as a railroad contractor. *Dobbas*, 2008 WL 324023, at *6–7.

As these cases illustrate, coverage may well be limited to only certain of an insured's operations if the different operations involve fundamentally different subject matters. *See Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. As in *Vandenberg*, Truck Tire operated multiple independent businesses (tire sales and servicing, weed cutting, and water main transportation), purchased insurance for only one of those businesses from Plaintiffs (tire sales and service), and later sought coverage for a different business (weed cutting). *See Vandenberg*, 796 F.3d at 779. These operations were run by a single corporate entity, but unlike the situation in *Philadelphia Indemnity*, the weed-cutting, tire sales and service, and water main transportation operations are completely separate subject matters and involve separate risks. Truck Tire's purchase of coverage from three separate insurers is consistent with this assessment. Plaintiffs issued policies to a company representing that "tire sales and service" was a complete and accurate description of its business and that "tire dealers" completely and accurately described the involved hazards. On this record, it would be unreasonable to conclude that the coverage also extends to injuries arising out of an accident involving a tractor used only for a weed-cutting contract with the City of Chicago, an employee who had no responsibilities related to tire sales and services, and weed-cutting activities that are not mentioned in the insurance contract. Because the Ohio Security policy was issued for the purpose of insuring a tire sales and service operation's "typical undertakings," it does not apply to the *Lee* lawsuit. *See Gemini*, 464 F. Supp. 2d at 650. Moreover, because the Ohio Casualty policy is coextensive with the Ohio Security policy, it also does not apply.

## II.    Duty to Defend and Indemnify

A court determining whether an insurer has a duty to defend or indemnify its insured "must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy."[19] *Valley Forge*, 223 Ill. 2d at 363, 860 N.E.2d at 314 (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 107–08, 607 N.E.2d 1204, 1212 (Ill. 1992)).  When making this comparison, the court must "construe the allegations liberally in favor of the insured."  *BASF AG*, 522 F.3d at 819.  "If the facts alleged fall within, or potentially fall within, the policy's coverage," the insurer must defend the insured.  *Valley Forge*, 223 Ill. 2d at 363, 860 N.E.2d at 314–15.  An insurer "may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts" that would potentially bring the claim within the policy's coverage.  *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (Ill. 1991).  "An insurer's duty to defend is much broader than its duty to indemnify its insured," *BASF AG*, 522 F.3d at 819 (quoting *Gen. Agents Ins. Co. of AM. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155, 828 N.E.2d 1092, 1098 (Ill. 2005)), and arises "only if the facts alleged actually fall within coverage," *Crum & Forster*, 156 Ill. 2d 384, 620 N.E.2d at 1081.

The parties agree that, if Plaintiffs' policies cover all of Truck Tire's operations, the Lee accident would be covered.  (TTD MSJ at 8; City MSJ at 7; Pls.' Resp. to Defs.' Mot. for Summ. J. ("Pls.' MSJ Resp.") [183] at 4.)  The *Lee* lawsuit asserts claims for negligence and wrongful death as a result of the death of Samyra Lee, who was struck by a tractor driven by Eric Rice. Rice, a seasonal employee, was engaged in weed-cutting services pursuant to Truck Tire's

---

[19]     The Plaintiffs note that a court may consider evidence extrinsic to the complaint, if necessary, to determine whether the underlying lawsuit states a claim covered by the policy.  *See Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 459–61, 930 N.E.2d 1011, 1019–21 (Ill. 2010) ("A [ ] court may . . . look beyond the underlying complaint in order to determine an insurer's duty to defend," unless "it tends to determine an issue crucial to the determination of the underlying action," because "the question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.").  This does not, however, allow the court to use extrinsic evidence to interpret the meaning of the contract itself.

contract with the City. Ohio Security's CGL policy provides for payment of claims for "'bodily injury' . . . to which this insurance applies," and gives Ohio Security "the right and duty to defend the insured against any 'suit' seeking those damages." (Ohio Security Policy at PageID #:2934.) The term "occurrence" includes an accident of the type alleged in the *Lee* lawsuit (*see id.* at PageID #:2949), and "bodily injury" includes the death of Samyra Lee as a result of being struck by the tractor. (*See id.* at PageID #:2969.) Finally, the "coverage territory" includes the City of Chicago, and the coverage period from July 24, 2015 to July 24, 2016 included the date of the accident, May 27, 2016. (*See id.* at PageID #:2947.)

As explained earlier, the *Lee* lawsuit did not arise out of Truck Tire's tire sales or services. *See Crum & Forster*, 156 Ill. 2d at 394, 620 N.E.2d at 1079. The tractor involved in the collision was used only for Truck Tire's weed-cutting activities, not in connection with tire sales or servicing. Moreover, Rice was a seasonal employee hired by Truck Tire only to perform weed-cutting work, and who had no responsibilities related to Truck Tire's tire sales and service operations. As in *Crum & Forster* in which "[t]he risk of conducting one's business in an unfair and tortious manner is certainly not one inherent in the practice of the real estate profession," the risk of striking pedestrians with a tractor during the course of weed-cutting work is not inherent in the practice of selling and servicing tires. *Id.* The coverage afforded by the body of Plaintiffs' policies must be read in light of the declarations and incorporated representations in the insurance application that limit the scope of coverage. To construe those policies as covering the *Lee* claim "would expand the coverage beyond what was contracted for by the parties." *Id.*; *see also BASF AG*, 522 F.3d at 822–23. In sum, because Plaintiffs' policies, as a whole, do not extend to Truck Tire's weed-cutting activities, the Lee accident does not even potentially fall within the scope of their coverage, and Plaintiffs Ohio Security and Ohio Casualty have no duty to defend or indemnify Truck Tire or any other Defendant in the *Lee* action. *Crum & Forster*, 156 Ill. 2d at 395, 398, 620 N.E.2d at 1079, 1081.

## III.    Reformation

Reformation of an insurance contract is appropriate "only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties and that there has been either a mutual mistake or a mistake by one party and fraud by the other." *First Mercury Ins. Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 46, 107 N.E.3d 240. 252–53 (2018).  Plaintiffs' claim for reformation asks the court, if Counts I and II were not decided in their favor, to change the written agreements between Truck Tire and Plaintiffs to conform to the parties' mutual intent to insure only Truck Tire's tire sales and servicing operations.  Because the policies, as written, unambiguously express such an intent, Plaintiffs claims for reformation, and Truck Tire's challenges to those claims, are moot.  The City of Chicago has argued that reformation in such a way as to strip the City of vested rights would be improper. That argument, too, is moot.

## IV.    Additional Insured

The City of Chicago argues that it qualifies as an additional insured under Plaintiffs' policies.  The City of Chicago was not specifically named as an additional insured in either policy, nor were Plaintiffs' policies included in the certificate of insurance that Truck Tire provided to the City pursuant to the weed-cutting contract.  The City nevertheless contends that the City is an additional insured under the Commercial General Liability Extension to Ohio Security's CGL policy which defines additional insureds to include "any person or organization whom you have agreed to add as an additional insured in a written contract" with respect to certain liabilities, including the type of injuries alleged in the *Lee* lawsuit.  (Ohio Security Policy at PageID #:2965.)  The City's weed-cutting contract with Truck Tire did require Truck Tire to name it as an additional insured in its CGL policy.  Again, however, because the complaint filed in the *Lee* lawsuit does not state a claim covered by Plaintiffs' insurance policies, the City's request for a declaration that it is an additional insured under the CGL and umbrella policies is moot.

## V.     Negligent or Fraudulent Misrepresentation

The Truck Tire Defendants also move for summary judgment on Counts V and VI of Plaintiffs' amended complaint, in which Plaintiffs alleged that Truck Tire made fraudulent representations in its insurance application, and alternatively, that Truck Tire made negligent misrepresentations in its insurance application. The Truck Tire Defendants claim first, that Truck Tire had no duty to communicate accurate information to Plaintiffs. (TTD MSJ at 18–19.) And, in any case, the Truck Tire Defendants contend that Truck Tire made no false statements of material fact because, after Plaintiffs' policy audit in 2014, Plaintiffs knew about all of Truck Tire's business operations. (*Id.* at 19.) Plaintiffs respond that there are outstanding disputes of material fact that preclude summary judgment on these Counts, but that those claims are moot if the court grants Plaintiffs' motion on Counts I and II. (Pls.' MSJ Resp. at 13, 15 n.4.) Because Plaintiffs Ohio Security and Ohio Casualty alleged Count V (fraudulent misrepresentation) and Count VI (negligent misrepresentation) in the alternative to Counts I and II, and because the court grants summary judgment in Plaintiffs' favor on Counts I and II, the court dismisses Counts V and VI of Plaintiffs' amended complaint as moot.

## CONCLUSION

Plaintiff Ohio Security's CGL policy and Plaintiff Ohio Casualty's umbrella policy unambiguously provide coverage only for Truck Tire's tire sales and service operations. Accordingly, Plaintiffs Ohio Security and Ohio Casualty's motion for partial summary judgment [170] is granted as to Counts I and II and denied as moot as to Counts III and IV. The Truck Tire Defendants' motion for summary judgment [173] is denied as to Counts I and II and denied as moot as to Counts III–VIII. The Defendant City's motion for summary judgment [177] is denied on Counts I and II and denied as moot with regard to its counterclaim. Civil case terminated.

ENTER:

Date:  November 26, 2019

REBECCA R. PALLMEYER
United States District Judge

31